UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SHREVEPORT ELECTRICAL PROFIT SHARING PLAN, ET AL | CIVIL ACTION NO. 04-1730 |
| VERSUS | JUDGE S. MAURICE HICKS, JR |
| ROPER ELECTRIC COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by the Plaintiffs, Shreveport Electrical Profit Sharing Plan, et al [Doc. No. 35]. The Plaintiffs' lawsuit is filed pursuant to Sections 515 and 502(g)(2) of ERISA, 29 U.S.C. §§1145 and 1132(g)(2), and Section 301(a) of the Labor Management Relations Act, 29 U.S.C. §185(a). The Plaintiffs contend that the Defendant, Roper Electric Company ("Roper") violated its "Letter of Assent-A" signed with IBEW Local 194 and the collective bargaining agreements to which the "Letter of Assent-A" bound Roper. The Plaintiffs' suit further seeks to enforce arbitral decisions made by the joint Labor-Management Committee as provided for under the terms of the collective bargaining agreement. Roper contends that the "Letter of Assent-A" and the collective bargaining agreements are invalid because the Union did not enjoy majority support.

Plaintiffs have moved for summary judgment. Roper opposes the motion. For the reasons which follow, the Court finds that there are no genuine issues as to any fact material to the motion, and Plaintiffs are entitled to judgment as a matter of law.

# BACKGROUND[1]

## I. The Parties.

Plaintiffs Shreveport Electrical Profit Sharing Plan, Shreveport Electrical Health and Welfare Fund, Shreveport Electrical Joint Apprenticeship Training Committee, Receiving Trust Fund and National Electrical Benefits Fund are employee benefit plans associated with IBEW Local 194 (hereinafter collectively referred to as the "Benefit Plans"). Plaintiff IBEW Local 194 is a labor union with its offices located in Shreveport, Louisiana. [Id.] Defendant Roper Electric Company ("Roper") is an employer in the electrical contracting industry. [Id.; Ex. I (Deposition of Jeff Roper) at p. 5].

## II. The Letter of Assent

On January 21, 2003, Roper and the Union signed a document entitled "Letter of Assent A" ("Letter of Assent"). [Ex. B (Letter of Assent-A); Ex. I (Roper Deposition) at p. 26]. The Letter of Assent authorized and named the

> North Louisiana Chapter, Inc., National Electrical Contractors Assoc., as its [Roper's] collective bargaining representative for all matters contained in or pertaining to the current and any subsequently approved inside labor agreement between the North Louisiana Chapter, Inc., National Electrical Contractors Assoc. and Local Union 194, IBEW. In doing so, the undersigned firm agrees to be comply with, and be bound by, all of the provisions contained in said current and subsequently approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the 1st day of February, 2003. It shall remain in effect until terminated by the undersigned employer giving written notice to the North Louisiana Chapter, Inc., National Electrical Contractors Assoc. and to the Local Union at least

---

[1] Since Roper's only response to Plaintiffs' statement of uncontested facts was to assert a legal argument, the Court accepts the Plaintiffs' facts as established.

> one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement."

[Ex. B; Ex. J (Deposition of Steve Martin) at pp. 47-48].

The "inside" collective bargaining agreement in effect on February 1, 2003, was effective by its terms from September 6, 2001 to September 3, 2004. [Ex. C (Inside Agreement [between the] IBEW Local 194 and North Louisiana Chapter, National Electrical Contractors, Inc. ("NECA") and IBEW Local 194] at Article I, Section 1; Ex. A; Ex. J at p. 47]. The Inside Agreement required Roper to pay monthly contributions to the Welfare Fund, the Profit Sharing Plan, the Joint Apprenticeship Training Committee, NEBF and the Receiving Fund, on behalf of Roper's employees, for each hour they worked. [Ex. C at Art. III, Sect.16; Art. IV, Sect. 28-30; Art. VII; Art. X]. It also required Roper to deduct working dues from the wages of the employees who authorized the deduction and to transmit the dues monthly to IBEW Local 194. [Id. at Art. IV, Sect. 29-31]. The Inside Agreement and the Funds' Declarations of Trust require that contributing employers file monthly remittance reports. The reports identify the employees who worked for Roper, the number of hours worked, and the contributions due for each employee. [Ex. C; Ex. D (Trust Agreement excerpts, submitted in globo)].

The Profit Sharing Plan, the Welfare Plan and NEBF have in effect policies for the collection of delinquent contributions. [Ex. E (Delinquency Policy of Profit Sharing Plan and Welfare Fund); Ex. F (Delinquency Policy of NEBF); Ex. G (Affidavit of Judy Reynolds-Cory)]. If the Profit Sharing Plan and Welfare Plan contributions are not timely received, 2 percent per month interest is assessed for each month of delinquency. [Ex. E (Delinquency Procedures of Profit Sharing Plan and Welfare Fund), Sect. IV, C]. The

delinquency policies of the Profit Sharing and Welfare Funds authorize imposing 20% liquidated damages in addition to 2 percent interest. [Ex. E, Sect. IV, C, 3; Ex. G].

Roper has worked within the jurisdiction of Local 194, but has not timely contributed the benefits required by the various Funds and has not paid the interest or other penalties assessed by the Funds. [Ex. A]. Further, Roper has not submitted contributions to the Funds or working dues to the Union for work performed by its employees since January 2004. [Ex. G]. In a letter dated March 26, 2004, addressed to the Union, Roper stated:

> This letter is to inform you per your inside agreement dated March 26, 2004, that as of March 31, 2004, Roper Electric Company, Inc. is terminating our Letter of Assent and will no longer be bound by same. Your employees shall be returned to you on the same date.

[Ex. H (Roper Letter dated March 26, 2004); Ex. I at pp. 38-39]. Roper's letter of March 26, 2004 was an attempt by Roper to terminate its obligation to abide by the Inside agreement with Local 194, effective March 31, 2004. [Ex. H; Ex. J at p. 21]

IBEW Local 194 received Roper's letter of March 26, 2004 on April 5, 2004. [Ex. A]. North Louisiana Chapter, National Electrical Contractors Association, received a copy of Roper's March 26, 2004 letter on April 14, 2004, which letter came in a Roper Electric Company envelope postmarked April 11, 2004. [Ex. H; Ex. J at pp. 19-20]

By letter dated April 7, 2004, IBEW Local 194 informed Roper that it had not properly terminated the contract. Roper did not respond. [Ex. K (Deposition of Thomas R. Norris) at pp. 27-28; Ex. L (April 7, 2004 Letter). The Plaintiffs contend that once NECA has bargaining authority, an employer cannot terminate the contract. [Ex. J at pp. 22-23; 47-50]

On or about May 3, 2004, Local 194 filed a grievance against Roper which alleges that Roper improperly terminated the contract. [Ex. M (May 4, 2004 Letter with Grievance)]. By certified letter dated May 4, 2004, Roper was informed by NECA that IBEW Local 194 had filed a grievance. A copy of the grievance and the Inside Agreement were enclosed and all were received by Roper. [Ex. M; Ex. I at p. 47; Ex. J at p. 31].

On May 19, 2004, a grievance hearing was held before the Shreveport NECA-IBEW Labor-Management Committee. Jeff Roper of Roper Electric attended and participated in the grievance hearing. [Ex. J at p. 33]. That same day, the Labor-Management Committee found Roper to be in violation of Article 1, Section 2 of the Inside Agreement. [Ex. J at pp. 33-35]. By letter dated May 24, 2004, the Labor-Management Committee notified Roper of its findings. [Ex. J at pp. 33-34; Ex. I at pp. 57-58; Ex. N (May 24, 2004 Letter)]. The Labor-Management Committee directed Roper to reemploy the employees laid off March 31 and to abide by all of the terms of the Inside Agreement. [Ex. N]. Roper did not comply with the May 24, 2004 letter from the Labor-Management Committee. [Ex. I at p. 58]. Roper did not appeal the Labor-Management Committee's decision or file suit to have it vacated. [Id. at p. 63].

By letter dated May 28, 2004, NECA notified employers bound to the inside agreement and who had not terminated their assignment of bargaining rights to NECA that negotiations were to begin with the Union for a new Inside Agreement. [Ex. O (May 28, 2004 Letter)]. Roper Electric was sent a copy of the letter. [Ex. J at pp. 50-52]. Roper did not respond. [Id. at p. 52].

On August 17, 2004, the Council on Industrial Relations ("CIR") issued a decision which established the terms of a new inside agreement. [Ex. J at pp. 52-53, ex. 4]. The

new Inside Agreement was made effective September 4, 2004 to September 4, 2007. [Ex. A; Ex. P (Inside Agreement, September 3, 2004 through September 4, 2007)]. Roper has not complied with terms of the Inside Agreement effective September 4, 2004 to September 4, 2007. [Ex. I at pp. 63-34]

IBEW Local 194 filed a grievance over Roper's failure to abide by the contract. By letter dated October 5, 2004, NECA sent a copy of the grievance, and notified Roper that the grievance would be heard on October 12, 2004. The letter was sent by certified mail and received by Roper on October 6, 2004. [Ex. I at pp. 60-61; Ex. J at pp. 36-40; Ex. Q (October 5, 2004 Letter)]. On October 12, 2004, the Labor-Management Committee found Roper was bound to the September 4, 2004 to September 7, 2007 Inside Agreement and was not abiding by it. [Ex. J at pp. 40-41; Ex. R (October 12, 2004 Grievance Hearing Minutes)]. Plaintiffs then filed the instant lawsuit on August 17, 2004 seeking to enforce the arbitral decisions and to collect the unpaid contributions to the Benefit Plans.

## LAW AND ANALYSIS

**I.  Summary Judgment Standard**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); see also, Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted." Id.; Little, 37 F.3d at 1076.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

## II. Plaintiffs' Claims Pursuant to Sections 515 and 502(g)(2) of ERISA.

The Benefit Plans are third-party beneficiaries of the collective bargaining agreement between Roper and the Union. See Agathos v. Starlite Motel, 977 F.2d 1500, 1505 (3rd Cir. 1992)(citation omitted). The rights of third-party beneficiaries typically are subject to any defenses that the promisor could assert in a suit by the promisee. Id. (*citing* J. Calamari & J. Perillo, The Law of Contracts § 17-10 (3d ed. 1987)). Collective bargaining agreements, however, are not typical third-party beneficiary contracts. Id. (*citing* Lewis v. Benedict Coal Corp., 361 U.S. 459, 468-69, 80 S.Ct. 489, 495, 4 L.Ed.2d 442 (1960)). In Lewis, the Supreme Court held that a union's breach of a collective bargaining agreement could not avoid an employer's obligation to make contributions to a union welfare fund, unless the parties agreed to preserve such a defense in unequivocal words. Id. at 470-71, 80 S.Ct. at 495-96.

In 1980, Congress passed section 515 of ERISA, 29 U.S.C. § 1145 (1988), which further limited the defenses available to employers. Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Id. Courts of appeals have interpreted section 515 as precluding employers from raising a variety of contract defenses as a means of avoiding the obligation to contribute to employee benefit plans. Indeed, the Fifth Circuit has noted that only three defenses are recognized: (1) that the pension contributions are illegal, (2) that the collective bargaining agreement is void *ab initio*, e.g., for fraud in the execution, and (3) that the employees have voted to decertify the union as their bargaining representative. Louisiana Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller General Masonry Contracting Co., 157 F.3d 404 (5th Cir. 1998).

Roper's sole defense is that the Letter of Assent is invalid since the Union did not enjoy majority support. However, a lack of majority support is not a valid defense to an action pursuant to ERISA section 515. See Louisiana Bricklayers, supra. See also MacKillop v. Lowe's Market, Inc., 58 F.3d 1441 (9th Cir. 1995); Agathos v. Starlite Motel, 977 F.2d 1500 (3d Cir. 1992); Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 316 (2d Cir. 1990); Berry v. Garza, 919 F.2d 87 (8th Cir. 1990); Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148 (7th Cir. 1989)(*en banc*). Accordingly, the Court finds that summary judgment on Plaintiff's ERISA claims is proper.

### III. Plaintiffs' Claims Pursuant to Section 301(a) of the Labor Management Relations Act.

When Roper attempted to withdraw its Letter of Assent, the Union filed a grievance pursuant to Article I, Sections 5 through 8 of the Inside Agreement [Ex. C]. The grievance was heard on May 19, 2004, with Roper in attendance. [Ex. J at pp. 33]. The joint Committee unanimously voted that the grievance should be sustained, and that Roper had untimely attempted to withdraw bargaining authority. [Id. at pp. 33-35; Ex. I at pp. 57-58; Ex. N] After the CIR resolved the contract issues, the Union filed a grievance over Roper's failure to abide by the new Inside Agreement. Although Roper had notice of the October 12 joint Labor-Management Committee meeting, no representative appeared. [Ex. I at pp. 60-61; Ex. J at pp. 36-40; Ex. Q]. The joint Committee unanimously sustained the grievance and found that Roper was bound to the 2004 to 2007 Inside Agreement. [Ex. J at pp. 40-41; Ex. R]. Roper did not appeal. Plaintiffs now seek to enforce those decisions.

The scope of judicial review of arbitration awards is limited. The Supreme Court's seminal decisions on this issue are the Steelworkers Trilogy: Steelworkers v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; Steelworkers v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; Steelworkers v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The Court in Enterprise Wheel held that

> The question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from him.

363 U.S. at 599, 80 S.Ct. at 1362. Similarly, the Court in Warrior & Gulf stated that "judicial inquiry ... must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator the power to make the award he made." 363 U.S. at 582, 80 S.Ct. at 1353. As the Fifth Circuit observed in Boise Cascade Corp. v. United Steelworkers of America, AFL-CIO, Local Union No. 7001, 588 F.2d 127, 128 (5th Cir.1979), the premise of the Steelworkers Trilogy is that the court should allow the parties to a collective bargaining agreement containing a binding arbitration clause to receive the benefit of the bargain: binding arbitration on contract disputes.

The scope of enforceable interpretation is concomitantly narrow:

> To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.... The requirement that the result of arbitration have "foundation in reason or fact" means that the award must, in some logical way, be derived from the wording or purpose of the contract....

Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., 415 F.2d 403, 412 (5th Cir.1969); *cf.* Local No. 370, Bakery, Confectionary and Tobacco Workers Intern. Union of America, AFL-CIO v. Cotton Brothers Baking Co., Inc., 672 F.2d 562 (5th Cir.1982).

According to the Inside Agreement, the joint Labor Management Committee is empowered to resolve "all grievances or questions in dispute" between the Union and an employer. [Ex. C at Art. I, Sect. 6]. This is an extremely broad grant of authority, and the Union's grievance fell squarely within it. Roper has failed to submit any evidence to create a genuine issue of fact. Since Plaintiffs have shown that the arbitration award draws "its essence from the collective bargaining agreement," the Court must look no further. See

United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. at 597, 80 S.Ct. at 1361. Summary judgment on this issue is appropriate as a matter of law.

**IV.    Damages.**

Roper has not complied with the terms of the September 4, 2004 Inside Agreement or the October 12, 2004 decision of the joint Labor-Management Committee. [Ex. I at pp. 58-63]. A payroll audit of Roper was performed by the certified public accounting firm of Cook & Morehart covering the period of January 1, 2004 through December 31, 2004. This audit determined that sums were due the Plaintiff Benefit Plans and the IBEW 194 from Roper for this period. [Ex. G, ex. 1].

Following receipt of this audit report and application of all payments made by or credits due Roper, Roper was calculated to owe the combined principal sum of $45,121.43 as delinquent contributions to the various funds for this period, segregated as follows:

| | |
|---|---|
| Profit Sharing Plan | $16,298.10 |
| Welfare Fund | $24,721.33 |
| Joint Apprenticeship Training Committee | $ 1,332.97 |
| Receiving Fund | $    501.48 |
| NEBF | $ 2,267.55 |

[Ex. G; ex. 2]. Following receipt of this audit report and application of all payments made by or credits due Roper, Roper was calculated to owe the additional sum of $3,054.74 to the IBEW 194 as working dues or assessments. [Id.] Since Roper did not contest the Plaintiffs' figures or submit any evidence to call these figures into question, the Court accepts Plaintiffs' figures as fact for the calendar year 2004.

However, the Plaintiffs have not yet performed an audit of Roper for the time period of January 1, 2005 to the present. Pursuant to the terms of the various agreements and delinquency policies, Plaintiffs are entitled to an audit of Roper's relevant books and

records to determine whether any delinquencies, as well as related penalties and interest, exist for this period as well.

Pursuant to Section 502(g)(2), Plaintiffs are not only entitled to the unpaid contributions, but they are also entitled to a mandatory award of prejudgment interest, liquidated damages, attorney's fees and costs. However, these amounts cannot be established until the unpaid contributions are determined. Accordingly, the Court will refer this matter to the Magistrate Judge to hold a scheduling conference for the purpose of establishing a discovery plan regarding the Plaintiffs' damages.

## CONCLUSION

The Court finds that Roper has not provided sufficient evidence to defeat the instant motion for summary judgment. There are no genuine issues as to any material fact. The Benefit Plan Plaintiffs have established their claims pursuant to Section 515 of ERISA. The Union Plaintiff has established its claim pursuant to Section 301(a) of the Labor Management Relations Act. This matter must now be referred to the Magistrate Judge to schedule further proceedings.

Therefore:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Plaintiffs, [Doc. No. 35] shall be **GRANTED**.

**IT IS FURTHER ORDERED** that this matter be referred to the Magistrate Judge for the scheduling of further proceedings consistent with this Memorandum Ruling.

Shreveport, Louisiana, January 18, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE